IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


JOHN M. MATTHEWS                                                    PLAINTIFF


        v.                              CIVIL NO. 05-5074


JO ANNE B. BARNHART, Commissioner
Social Security Administration                                     DEFENDANT


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff John M. Matthews brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claim for supplemental security income (SSI) benefits under the

provisions of Title XVI of the Social Security Act (Act).

**Procedural Background:**

The application for SSI presently before this court was filed on April 21, 2003, alleging

an inability to work since September 1, 2002, due to gout, pain in all joints, tinnitus with hearing

loss and hypertension. (Tr. 48-51). An administrative hearing was held on October 7, 2004.

(Tr.233-281). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was fifty-seven years of age and

possessed a high school education plus one year of college education. (Tr. 238). Records indicate

plaintiff's past relevant work consists of work as a self-employed construction carpenter and a lead

carpenter for a building contractor. (Tr. 11, 239-244).

By written decision dated January 26, 2005, the ALJ found that plaintiff has an impairment or combination of impairments that are severe. (Tr. 18). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments do not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 18). The ALJ found plaintiff retained the residual functional capacity (RFC) to perform work activities at the medium level of exertion. (Tr. 18). More specifically, the ALJ found plaintiff can lift and/or carry fifty pounds occasionally, twenty-five pounds frequently and push and/or pull the same amounts; can stand and walk up to six hours in an eight-hour workday; can sit for up to six hours in an eight-hour workday; and can frequently bend, squat, crouch, crawl and climb. The ALJ further found that due to plaintiff's profound (severe) high frequency hearing loss in his left ear and mild high frequency loss in his right ear, plaintiff was unable to work in a job that requires excellent hearing. (Tr. 19). With the help of vocational expert testimony, the ALJ found plaintiff could perform other work as a stock and inventory clerk, a food counter clerk and a food preparation worker. (Tr. 19).

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision by the Appeals Council was denied on March 30, 2005. (Tr. 2-4). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties were afforded the opportunity to file an appeal brief; however, only defendant chose to do so. (Doc. # 7). This case is before the undersigned for report and recommendation.

**Evidence Presented:**

The pertinent medical evidence reflects the following. On June 27, 2002, plaintiff reported to the Veteran's Administration Hospital (V.A.) for a general checkup with lab. (Tr. 117). Plaintiff arrived at the clinic alert and ambulatory and reported no mobility changes for the past three months. (Tr. 117). He also denied pain. Plaintiff reported a growth on his ankles bilaterally and a fungus in his ears that caused them to itch. He also requested a Naproxen refill. Dr. Clark Flanary noted that Lidex helped with the growth on the ankles, but it was not completely healed. With regard to plaintiff's extremities, Dr. Flanary noted no clubbing, edema, stiffness or change in strength. Plaintiff also exhibited normal range of motion and denied pain. Dr. Flanary recommended increasing Atorvastatin to 20mg, changing Lidex cream to ointment and using the ointment after the application of Mycelex. Plaintiff was instructed to return in nine months.

Plaintiff returned to the V.A. for a routine visit on March 20, 2003. Plaintiff arrived at the clinic ambulatory and denied any mobility changes over the past three months. (Tr. 110, 189). Plaintiff reported he had quit taking his cholesterol medication and was trying to reform his diet. (Tr. 110). He also reported drinking twelve beers a day. Plaintiff asked about switching to Darvocet as a pain medication because the Naproxen was not working. He also wanted to change medications for his gout. He reported experiencing problems with gout every few months. Dr. Flanary noted plaintiff's cholesterol levels had elevated since plaintiff stopped taking his medication. With regard to plaintiff's extremities, Dr. Flanary noted no clubbing, edema, stiffness or change in strength. Plaintiff also exhibited normal range of motion and

3

**AO72A**
**(Rev. 8/82)**

denied pain. Dr. Flanary prescribed Allopurinal and Darvocet N-100 for severe pain. Plaintiff was further instructed to stop drinking.

On July 22, 2003, plaintiff underwent a consultative general physical examination performed by Dr. Michael Westbrook. (Tr. 119-125). Plaintiff complained of a history of gout in his left ankle, left wrist and great toes, decreased hearing, a history of ulcers and pain in his knees, feet, hips, shoulder, wrist and elbows. Upon examination, Dr. Westbrook noted plaintiff had full range of motion in his spine and extremities with no heat, swelling or tenderness noted with the exception of some mild swelling in his left ankle and left great toe. Plaintiff's neurological examination and his limb functioning examination were normal. Dr. Westbrook obtained x-rays of plaintiff's right ankle and noted that it showed some degenerative changes in his ankle joint. (Tr. 126). Dr. Westbrook noted plaintiff had trouble hearing but that he could hear normal conversation. Dr. Westbrook's diagnosis was gouty arthritis and hypertension.

On October 1, 2003, plaintiff's wife called stating plaintiff had gout. (Tr. 185). Plaintiff's wife reported that the only thing that seemed to help was a "big ole shot of steroids." Dr. Flanary started plaintiff on Colchicine and Benimid to treat his gout.

On December 22, 2003, plaintiff presented to the V.A. clinic for a routine check up. (Tr. 196). Plaintiff presented ambulatory and denied and mobility changes in the past three months. (Tr. 183). Dr. Flanary noted plaintiff's lipids were elevated and that he was out of his blood pressure medication. (Tr. 194). Dr. Flanary also noted plaintiff's LFT was elevated and that plaintiff persisted in drinking beer. With regard to plaintiff's extremities, Dr. Flanary noted no clubbing, edema, stiffness or change in strength. Plaintiff also exhibited normal range of motion and denied pain. (Tr. 195). Dr. Flanary renewed plaintiff's Maxzide and Metoprolol

4

prescriptions and added Valium as needed for sleep. Dr. Flanary further recommended plaintiff stop drinking. Plaintiff was to return in nine months for a follow-up appointment. (Tr. 196).

Due to complaints of hearing loss, plaintiff saw Dr. Stephen Cashman on January 19, 2004. (Tr. 127-129). Plaintiff also complained of tinnitus in both ears but denied otalgia, vertigo and drainage from the ear. Dr. Cashman noted plaintiff exhibited mild difficulty understanding speech at normal conversational levels. After examining plaintiff and reviewing test results, Dr. Cashman assessed plaintiff with bilateral mild to profound sensorineural hearing loss and recommended hearing aids in both ears. Since plaintiff reported experiencing difficulty with background noise with his previous hearing aids, Dr. Cashman recommended plaintiff obtain binaural aids with directional microphones to help with background noise. He also noted plaintiff may qualify for hearing aids through the V.A.

On September 21, 2004, plaintiff presented to the V.A. clinic for a routine appointment. (Tr. 177). Plaintiff arrived at the clinic ambulatory and denied any mobility changes over the past three months. (Tr. 178). Plaintiff reported he had been out of his blood pressure medication for several months. Plaintiff also requested a Darvocet prescription refill. Plaintiff denied experiencing acute or chronic pain but did report that the rash around his ankles had not improved. (Tr. 177, 179, 193). Plaintiff reported to Dr. Flanary that he was having gout problems with his right elbow. (Tr. 175). Upon examination, Dr. Flanary noted no clubbing, edema, stiffness or change in strength in plaintiff's extremities. Plaintiff also exhibited normal range of motion and denied pain. Dr. Flanary prescribed Darvocet for pain and an appointment on October 18, 2004, was scheduled with a dermatologist for further evaluation of plaintiff's ankle rash. Plaintiff was instructed to return for a follow-up appointment in nine months.

5

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

AO72A
(Rev. 8/82)

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 416.920 (2003).

## Discussion:

The relevant period under consideration for plaintiff's SSI application is from his filing date of April 21, 2003, through the date of the Commissioner's final decision denying disability on January 26, 2005. (Tr. 19, 48). *See Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989) (SSI benefits are not payable for the period prior to the application; therefore, the relevant time period is from the date of the application). Evidence establishing his impairments prior to this time period is relevant only to the extent that it relates to his condition during the relevant time period. *See Pyland v. Apfel*, 149 F.3d 873, 876-77 (8th Cir. 1998) (evidence concerning ailments outside the relevant time period can support or elucidate the severity of a condition; however, such evidence cannot serve as the only support for disability); 20 C.F.R. §§ 416.330, 416.335.

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was

7

required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320,1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

Plaintiff's alleges disabling gout with associated pain in all of his joints. The medical evidence establishes plaintiff has sought treatment and has been prescribed medication for gout and associated pain. While plaintiff testified he had experienced four week long gout flare-ups in the past six months which sometimes included horrific pain leaving him unable to even put on his boots, the medical evidence shows that in March of 2003, plaintiff reported experiencing flare-ups every few months and never reported an inability to put on his boots or to ambulate. (Tr. 110). In fact, plaintiff reported no changes in his mobility for the past three months on June

8

27, 2002, March 20, 2003, December 22, 2003, and September 21, 2004. (Tr. 110, 117, 178, 183). Furthermore, at each of the above referenced visits to the V.A. clinic, Dr. Flanary found no clubbing, edema, stiffness or change in strength in plaintiff's extremities. Plaintiff also exhibited normal range of motion and denied pain at these visits. On July 22, 2003, Dr. Westbrook, a consultative examiner, found plaintiff had full range of motion in his spine and extremities with no heat, swelling or tenderness noted with the exception of some mild swelling in his left ankle and left great toe. Plaintiff's neurological examination and his limb functioning examination were also normal. Based on the record as a whole, we find substantial evidence supporting the ALJ's determination that plaintiff's gout and associated joint pain are not a disabling impairments.

With regard to plaintiff's hearing problems, the record does establish plaintiff has bilateral mild to profound sensorineural hearing loss and recommended hearing aids in both ears. Since previous hearing aids used by plaintiff did not filter out background noise, Dr. Cashman recommended plaintiff obtain binaural aids with directional microphones. The record does not show plaintiff has obtained these hearing aids and the record fails to show he has sought help to obtain them or is unable to purchase them on his own. *See Guilliam v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005)(failure to follow a recommended course of treatment weighs against credibility). The record further reveals that the field office agent did not indicate plaintiff's hearing caused difficulty with their telephone conversation in May of 2003, and plaintiff indicated that he did not use a special amplifier for his telephone in June of 2003. (Tr. 66-72). Furthermore, Dr. Cashman indicated plaintiff only had mild difficulty understanding speech at normal conversational levels and Dr. Westbrook noted plaintiff had trouble hearing but could

9

hear normal conversation. (Tr. 121, 127). Based on the record as a whole, we find substantial evidence supporting the ALJ's determination that plaintiff's hearing problems are not disabling.

Plaintiff testified that he experiences side effects including diarrhea caused by his Colchicine and impaired judgment caused by his pain medication. (Tr. 245, 256). However, plaintiff failed to report these side effects to his treating physicians. *Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (alleged side effects were properly discounted when plaintiff did not complain to doctors that her medication made concentration difficult).

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. In a Supplemental Interview Outline dated June 26, 2003, plaintiff indicated he is able to bathe on one foot but needed help dressing and shaving; is able to perform most household chores with some pain, including mowing the lawn on a good day; is able to go to the bank and post office; is able to prepare meals, pay bills and sometimes drive; and is able to watch television, listen to the radio, and read but noted difficulty hearing. (Tr. 72-73). At the administrative hearing plaintiff testified that since he had applied for disability he had done little odd jobs for friends that did not require an extended period of time. (Tr. 251). He also reported the ability to perform some household chores including washing dishes. (Tr. 260). When asked about his ability to work, plaintiff testified that he thought he would still be able to supervise a job as long as he was not having problems with diarrhea. (Tr. 266). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain. See *Cruze v. Chater,* 85 F.3d 1320, 1324 (8th Cir.1996) (mowed lawn, shopped, odds jobs and visits town); *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection

10

of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability); *See Polaski* at 1322.

Further, the ALJ considered the testimony of plaintiff's wife. After hearing her testimony, however, the ALJ properly concluded that her testimony was not fully credible because she had an interest in the outcome of the case. As the testimony of family members and friends need only be given consideration and need not be considered credible, the ALJ properly discredited the testimony of the witness. *Lawrence v. Chater*, 107 F.3d 674, 677 (8th Cir. 1997).

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.945(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th

11

Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, in finding plaintiff able to perform medium work, the ALJ considered plaintiff's subjective complaints, the medical records of his treating physicians, and the evaluation of a consultative examiner. The ALJ noted the RFC assessment completed by Dr. Steve Owens, a non-examining medical consultant, indicating plaintiff was able to perform medium work. ( Tr. 139-137). In making this determination the ALJ also noted the plaintiff's capacity to perform this level of work is further supported by the fact that plaintiff's examining physicians placed no restrictions on his activities. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Therefore, based on all of the evidence contained in the file, we find substantial evidence supporting the ALJ's RFC determination.

Next, we look to the ALJ's determination that plaintiff could perform substantial gainful employment within the national economy. We find that the hypothetical the ALJ posed to the

12

vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff is not disabled as he is able to perform other work as a stock and inventory clerk, a food counter clerk and a food preparation worker. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**Conclusion:**

Based on the foregoing, we recommend affirming the ALJ's decision, and dismissing plaintiff's case with prejudice. **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 7th day of June 2005

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

_____

**AO72A**
**(Rev. 8/82)**